UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MARY A PIPER, *et al.*,

    Plaintiffs,

    v.

FORD MOTOR CO, *et al.*,

    Defendants.

Case No. 3:24-CV-00116-GSL-AZ

## OPINION AND ORDER

This matter is before the Court on Defendant Thor Motor Coach, Inc.'s ("Thor") Motion for Summary Judgment [DE 77] filed on May 13, 2025. Plaintiffs, Mary Piper and Thomas Loveless (hereinafter referred to as "Plaintiffs"), responded in opposition [DE 82] on June 24, 2025, and Thor replied [DE 83] on July 3, 2025. For reasons set forth below, the Motion is **GRANTED**.

### Background

This lawsuit stems from Plaintiffs' purchase of an RV on February 18, 2022, from a Camping World ("Camping World") sales center located in Ashland, Virginia. [DE 79, ¶1]. The RV was manufactured, in part, by Thor. [*Id.* at ¶ 2]. Thor provided Plaintiffs with a Limited Warranty covering portions of the RV. [*Id.* at ¶ 3]. Shortly after taking possession of the RV, Plaintiffs encountered several issues. [DE 27, ¶10-13]. As a result, they took the RV back to Camping World to be inspected and serviced on multiple occasions. [*Id.*]. Some of the repairs were covered under the Limited Warranty, while some were not. [*Id.* at ¶¶ 11-14]. On August 16, 2023, Plaintiffs filed this lawsuit against Thor, among others, for Thor's alleged breach of the Limited Warranty. [DE 1].

Plaintiffs' Amended Complaint alleged three counts against Thor: (1) Violation of the Virginia Motor Vehicle Warranty Act; (2) Violation of the Magnuson-Moss Warranty Act ("MMWA"); and (3) Violation of the Virgina Consumer Protection Act. [DE 27]. Thor filed a Motion to Dismiss [DE 34] on April 10, 2024. The Court granted the motion as to counts I and III and denied the motion as to count II. [DE 74]. Therefore, count II, violation of the MMWA, remains pending, and is the basis for the instant Motion.

*Undisputed Facts*

By purchasing an RV manufactured by Thor, Plaintiffs were provided with a Limited Warranty covering portions of the RV. [DE 79 at ¶ 3]. Plaintiffs agreed to the terms of the Limited Warranty. [*Id*. at ¶ 5]. Terms regarding coverage and causes of action involving the policy are as follows:

> Coverage ends 12 months after the first retail owner takes delivery of the motorhome from an authorized dealership OR after the odometer reaches 15,000 miles, whichever occurs first. Delivery occurs when the retail owner takes physical possession of the motorhome or has alterations done to it, whichever occurs first. **ANY CLAIMS AND CAUSES OF ACTION AGAINST TMC ARISING OUT OF THIS LIMITED WARRANTY, PURCHASE OR OPERATION OF THE MOTORHOME, INCLUDING FOR: BREACH OF THIS 12 MONTH LIMITED WARRANTY OR IMPLIED WARRANTIES, REVOCATION OF ACCEPTANCE, AND VIOLATIONS OF STATE CONSUMER PROTECTION AND DECEPTIVE TRADE LAWS MUST BE COMMENCED NOT MORE THAN 90 DAYS AFTER THE WARRANTY ENDS.**

[DE 79 at ¶ 8] (emphasis in original). The Limited Warranty further explained that "repairs and promises to repair do not extend the time when you commence a breach of warranty claim and shall not extend the coverage period." [DE 79 at ¶ 9]. Additionally, "before you can seek other legal or equitable remedies for breach of this express warranty or for breach of any implied warranty," the "Repair Remedy" and the "Back-Up Remedy" provisions "**MUST** both be

2

exhausted **AND** th[o]se remedies must fail to fulfil their essential purpose[.]" [DE 82-1 at 17] (emphasis in original).

> The "Repair Remedy" provision states as follows:
>
>> [Thor]'s sole and exclusive obligation is to repair any covered defects discovered within the warranty coverage period if:
>>
>> (1) Within 10 days of your discovery of a defect you notify [Thor] or an authorized dealership of the defect;
>> (2) AND you deliver your motorhome to [Thor] or an authorized dealership (at your expense), provided, however, that at [Thor]'s election it may require you to deliver the motorhome to its facilities in Indiana or to another authorized service center or dealership for certain repairs.

[DE 16-1 at 9, 13]; [DE 82-1 at 17]. The "Back-Up Remedy" provision states, in pertinent part:

> If the primary repair remedy fails to successfully cure any defect after a reasonable number of repair attempts, your sole and exclusive remedy shall be to have [Thor] pay an independent service shop of your choice to perform repairs to the defect **OR** if the defect is incurable, have [Thor] pay diminished value damages.

[*Id*.] (emphasis in original). The Limited Warranty also provides for separate Structural Coverage.[1] [*Id*. at 19]. The Structural Coverage period is 12 years or 100,000 miles and covers "only defects in materials and construction, including welds, of the frame structure of exterior walls (excluding slideouts and ramp doors), roof, and floor. Coverage excludes damage caused by water intrusion, corrosion, damage due to road hazards, accidents, and other intentional or unintentional blunt forces." [*Id*.]. The "Repair Remedy" and "Back-Up Remedy" also apply to claims related to the Structural Coverage. [*Id*. at 21]. Finally, the Limited Warranty mandates that claims for breach of warranty be governed by Indiana law. [*Id*. at 17].

---

[1] The Limited Warranty also provides Lamination Coverage, however that is not at issue here. [DE 82-1 at 18-21].

3

Shortly after purchasing the RV in February 2022, Plaintiffs began experiencing issues with it. [DE 79 at ¶ 7; 82-2, ¶2]. A work order, #25186, from Camping World, dated January 18, 2023, showed that a "45 Point Inspection" of the RV was conducted. [DE 82-1 at 6]. Between Plaintiffs complaints regarding the RV and the inspection, the following issues were found: "black tank leak", "outside sink won't drain", issues with the macerator pump, broken window knob, "roof has multiple voids and cracks and needs to be resealed", "kitchen counter top[] silicone is cracked and pulling [a]part, needs [to be] resealed". [*Id*. at 5-6]. The inspection itself cost $329.99. [*Id*. at 6]. The work order stated that the remaining issues were either covered under the warranty or fixed at no charge, except for fixing the sink which was estimated to cost $18.50. [*Id*. at 5-6].

An April 1, 2023 Camping World work order, #25876, indicated that the macerator pump issue, roof voids and cracks, and kitchen counter were corrected and all covered under the Limited Warranty. [DE 82-3, Pages 1-2]. That work order also provided that Plaintiffs complained of the radio, back-up camera, and air conditioner not working properly, and "wind [was] coming in from [the] windshield." [*Id*. at 2]. The work order further stated that the air conditioner issue was "bypassed" because the valve would need to be replaced, that the black tank needed to be replaced and that Plaintiffs would need to return once the part was in, but that both were covered under the Limited Warranty. [*Id*.] Finally, the windshield would need to be replaced by an independent repair shop. [*Id*.]. It is unclear whether the radio and back-up camera issue was ever corrected. [*Id*.].

The alleged facts giving rise to the MMWA claim are as follows: Plaintiffs brought the RV back to Camping World on April 1, 2023 to complete the required work detailed in the January 2023 work order. [82-1 at ¶ 6]. Plaintiffs claim that Thor agreed to have the work completed by June 7, 2023. [Id. at ¶ 7]. Plaintiffs also allege that Thor had previously "expressly told [them]

4

that the [Limited] [W]arranty would be extended in order to cover the items in [the January 18, 2023 work order]." [*Id*. at ¶ 8]. Plaintiffs state that when they picked the RV up on June 7, 2023, the repairs on the black tank, macerator pump, electrical harness, and awning were not complete[2], but that they drove it to Nashville anyway. [*Id*. at ¶¶ 7, 9]. Plaintiffs admit they did not take the RV to "another 'independent service shop of [their] choice to perform repairs to the defects.'" [*Id*. at ¶ 9] (emphasis omitted). They state that they saw "no point" in doing so because "Camping World was the independent service shop of [their choice]," and additionally, that "[i]t would have been a vain effort to try another repair shop" because Thor allegedly could not provide the necessary parts. [*Id*.]. Plaintiffs proceeded to file the instant lawsuit against Thor for alleged breach of the Limited Warranty.

## Legal Standard

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the relevant substantive law, it is outcome determinative. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute over a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

---

[2] There is no clear factual allegation in the record that indicates what repairs, if any, were outstanding at the time this lawsuit was filed.

In deciding a motion for summary judgment, the court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, the court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## Discussion

Thor contends that it is entitled to summary judgment on count II – violation of the MMWA – because the timeframe under which Plaintiffs could bring such a claim has expired. [DE 78 at 1]. In addition, Thor claims, Plaintiffs failed to exhaust the "Back-Up" remedy provision of the Limited Warranty before initiating this lawsuit. [*Id.*].

"[T]he MMWA allows consumers to enforce [limited] written and implied warranties in federal court, [as provided in section 2310(d)(1),] borrowing state law causes of action." *Tinnermon v. REV Recreation Grp., Inc.*, 2023 WL 1765414, at *7 (N.D. Ind. Feb. 3, 2023). Therefore, the MMWA is a vehicle for some state law claims – like breach of warranty – to be heard in federal court. *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001). Additionally, the MMWA lacks its own statute of limitations period, so the court must apply the limitations period for the equivalent state law claim. *See N. Star Steel Co. v. Thomas,* 515 U.S. 29, 33-35 (1995).

The Limited Warranty contains a choice of law provision that states that the laws of Indiana are to apply to any dispute arising from it, and the parties do not dispute this. *See* [DE 79 at ¶ 14]; [DE 16-1, Page 9]; *see also* (*Tinnermon*, 2023 WL 1765414, at *7 (N.D. Ind. Feb. 3, 2023))

("Indiana's choice of law provisions honor contractual choice of law provisions unless the parties' choice of law contradicts public policy"). Under Indiana law, "[a]n action for breach of any contract [or warranty] … must be commenced within four (4) years after the cause of action accrued … [or by] original agreement[,] the parties may reduce the period of limitations to not less than one (1) year, but may not extend it." IND. CODE § 26-1-2-725(1). A cause of action "accrues when the breach occurs." § 26-1-2-725(2). "A breach of warranty occurs when tender of delivery is made." *Id*.

The following material facts are undisputed: Plaintiffs took delivery of the RV on February 18, 2022, Thor's Limited Warranty provides that "any claims and causes of action arising out of [it] … must be commenced not more than 90 days after the warranty ends," and Plaintiffs initiated this cause of action for breach of warranty on August 16, 2023. *See* [DE 1]; [DE 79 at ¶ ¶ 1,8]. Given these unconverted facts, it appears Plaintiffs would have needed to file the instant lawsuit by May 19, 2023 in order to avoid a statute of limitations issue, and by their response to the instant motion, it does not appear that they disagree. Rather, they claim that the time period for which they had to commence a breach of warranty action was extended by way of an oral agreement between Thor and Plaintiffs. [DE 82 at 1-3]. They also claim that the RV defects at issue do not fall under the Limited Warranty, but rather under the Structural Warranty which has a limitations period of 12 years. [*Id*. at 1-2]. Thor disputes that this oral agreement was ever made and further points to the provision within the Limited Warranty that provides that "[n]o person has authority to enlarge, amend or modify this Limited Warranty[,]" and Thor "is not responsible for any undertaking, representation or warranty made by any dealer or others beyond those expressly set forth within this Limited Warranty." [DE 82-1 at 6].

*Equitable Estoppel*

Taking the equitable estoppel issue first, Plaintiffs claim that they and Thor entered into an oral agreement, therefore allowing them to file this lawsuit after May 19, 2023, outside of the limitations period expressly provided for in the Limited Warranty. [DE 82 at 2-3]. They argue that grounds for equitable estoppel are present here. [*Id*.].

"The party asserting equitable estoppel must show that he: (1) lacked knowledge and means to discover the facts in question; (2) relied upon the conduct of the party estopped; and (3) as a result, changed his position prejudicially." *Shearer v. Thor Motor Coach, Inc*., 470 F. Supp. 3d 874, 882 (N.D. Ind. 2020) (internal citations omitted). Plaintiffs claim, in their Declaration attached to their response to the instant motion, that "Thor representatives told [them] the warranty was extended to make sure all the repairs were made under the warranty." [DE 82-1 at ¶ 5]. Plaintiffs argue that because equitable estoppel is often a question of fact, the attachment of the Declaration alone is evidence enough to survive summary judgment. The Court disagrees.

First, Plaintiffs equitable estoppel argument is underdeveloped. Plaintiffs only support for this argument is that their statement in their Declaration that Thor orally agreed to extend the warranty and their reliance on that agreement led them to believe they did not need to obtain counsel and file suit before coverage under the Limited Warranty ended. *See* [DE 82 at 3].

The Court acknowledges that evidence "presented in a self-serving affidavit … is enough to thwart a summary judgment motion," but "a nonmoving party at the summary judgment stage cannot rest upon conclusory statements in affidavits; [they] must go beyond the pleadings and support [their] contentions with proper documentary evidence." *Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 320 (7th Cir. 2022) (internal quotations omitted). Plaintiffs' Declaration is exactly what the Seventh Circuit instructs Courts not to rely on in deciding a motion for summary

8

judgment. *See Id*. The Declaration contains conclusory statements that an oral agreement to extend the Limited Warranty was made but is contradictory regarding who specifically the oral agreement was made with and void of any explicit terms of the agreement. [DE 82-1 at 1-4].

One paragraph of the Declaration states the oral agreement was made with Camping World, in association with Thor, on April 1, 2023. [[DE 82-1 at ¶6]. In another paragraph it states that the agreement was made with Thor representatives in January 2023. [*Id*. at ¶ 8]. Additionally, the only documentary evidence beyond the Declaration provided to the Court are the two work orders[3] described above. [DE 82-1 at 6-7]; [DE 82-3]. The Court has examined those work orders in detail, and there is nothing in those work orders that would lead a reasonable person to conclude this alleged agreement was made.

Finally, even if there was an oral agreement to extend the Limited Warranty, such an agreement would be void by the very terms of the Limited Warranty. *See* [DE 82-1 at 6] (stating that "[n]o person has authority to enlarge, amend or modify this Limited Warranty[,]" and Thor "is not responsible for any undertaking, representation or warranty made by any dealer or others beyond those expressly set forth within this Limited Warranty"). For these reasons, the Court finds that the Limited Warranty coverage was not extended, and equitable estoppel does not apply.[4] Therefore, Plaintiffs MMWA claim for breach of Limited Warranty is barred by the statue of limitations.

---

[3] Plaintiffs cite to a third work order dated February 21, 2022. This work order is not in the designated evidence.

[4] The Court notes that Plaintiffs briefly argue that this oral agreement was actually the creation of a whole new contract between them and Thor, and the consideration for such was that Plaintiffs "were to receive the work promised on the work orders" and Thor "was to receive a happy, satisfied customer who continue use Thor's Product maintaining its marketshare for future products sales associated with additional repairs." [DE 82 at 4]. The Court finds this argument to be nonsensical and frivolous.

*Structural Warranty*

Plaintiffs Structural Warranty argument appears to be a final attempt at saving their MMWA claim against Thor. As an initial matter, nowhere in the Amended Complaint is there any reference to the Structural Warranty or any purported breach. The MMWA claim is for Thor's alleged each of the *Limited* Warranty for failing to make repairs of the RV that fall under that warranty. (emphasis added); *see* [DE 27 at ¶ 25] ("The Limited Warranty has failed its essential purpose and the Defendants have violated the Act due to their inability to repair or replace the nonconformities within a reasonable time and has refused to provide the Plaintiffs with a refund as required by U.S.[C.] §2304(a)(1)").  Somehow, Plaintiffs are now arguing that the repairs fall under the Structural Warranty, completely discrediting their argument regarding the Limited Warranty and the alleged extension of it. [DE 82 at 1].

Plaintiffs claim that the roof defects fall under the Structural Warranty. They support this by saying Plaintiffs' Declaration "establishes there is a 12-year structural warranty on the roof defects." [DE 82 at 1].  They state that summary judgment "must be denied on this fact alone." [*Id.*]. The January 18, 2023 work order detailing the roof defect states as follows:

> FOUND FROM 45 POINT [INSPECTION]
> ROOF HAS MULTIPLE VOIDS AND CRACKS AND NEEDS RESEALED – 2.16 WARRANTY APPROVES 1 HR TO RESEAL ROOF.

[DE 82-1 at 5] (emphasis added in original).  Thor argues that even if the roof defect fell under the Structural Warranty, Plaintiffs failed to exhaust the "Back-Up" remedy prior to bringing this action. [DE 83 at 13].

As it relates to the roof, the only evidence Plaintiffs provide is a work order showing that the RV was taken to Camping World on January 18, 2023 for the roof issue. See [DE 82-1 at 6]. The April 1, 2023, work order shows that the "roof ha[d] been resealed" at no charge. [DE 82-3 at

10

2]. This alone is troubling given that it appears the roof issue was corrected, and it was covered under the warranty. Regardless, Plaintiffs admit that they "saw no point in taking [their] unit to another '*independent service shop of our choice to perform repairs to the defects*' because Camping World was the independent service shop of our choice." [DE 82-1 at ¶ 9] (emphasis in original). Plaintiffs appear to be insinuating that Camping World was an independent service shop, and since they brought the RV to Camping World, they fulfilled the "Back-Up" remedy. However, *assuming arguendo*, if Camping World is considered an independent service shop for purposes of the "Back-Up" remedy, then Plaintiffs failed to exhaust the "Primary" remedy because they did not "deliver [the RV] to [Thor] or an authorized dealership …" before bringing it to Camping World on January 18, 2023. In other words, Plaintiffs cannot claim that taking the RV to Camping World once exhausted both the "Primary" and "Back-Up" remedies before filing suit. The evidence shows that Plaintiffs did not exhaust both remedies before filing this action as required under the Limited and Structural Warranties.

In their response to the instant Motion, Plaintiffs change course for a final time and argue that they actually did not exhaust the "Back-Up" remedy, but that was because it would have been a "vain and useless [a]ct." [DE 82 at 5]. Specifically, they claim that "nothing could be a vainer and more useless act than to require [them] to find another independent repair shop to attempt repairs when Thor had refused or was unable to provide the replacement black tank from the date of sale on February 18, 2022 all the way up to June 8, 2023." [*Id*.]. Plaintiffs provide no evidence, besides their own Declaration, that Thor was unable to provide replacement parts. In fact, the Camping World work orders they provide do not state anything regarding the parts being unavailable. Therefore, even if the Court did not find that the MMWA claim was time barred, the

11

MMWA claim fails because Plaintiffs failed to exhaust both remedies as required under the Limited Warranty.

## Conclusion

Accordingly, the Court **GRANTS** Thor's Motion for Summary Judgment, hereby dismissing them from this lawsuit.

SO ORDERED.

ENTERED: October 10, 2025

                                            /s/ GRETCHEN S. LUND
                                            Judge
                                            United States District Court